# UNITED STATES DISTRICT COURT
## SOUTHERN OHIO DISTRICT
## EASTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                     **Case No. CR-2-07-0186**

                                         **Judge Smith**

MARCUS K. COBB,

        Defendant.

## OPINION & ORDER

Defendant Marcus Cobb has been named in a multiple count Indictment, charging him with a violation of the Hobbs Act; Bank Robbery with Violence and related weapons offenses in violation of 18 U.S.C. § 1951, 18 U.S.C. § 2113(a), (d) and 18 U.S.C. § 924(c), respectively. The Indictment charges offenses relating to the robbery of the Bucca Di Beppo Restaurant, Huntington Bank, and Chase Bank, which occurred on October 8, 2006, January 26, 2007, and April 12, 2007 respectively.

This matter is before the Court on the following pretrial motions filed by Defendant: (1) motion in limine to exclude reference to CODIS (Doc. 51); (2) motion in limine to exclude fingerprint evidence (Doc. 52); (3) motion in limine to exclude testimony or references to a DNA match (Doc. 72); (4) motion in limine to exclude evidence of enhanced or altered photographs or videos (Doc. 73); (5) motion in limine to exclude hearsay evidence (Doc. 74); (6) motion in limine to exclude evidence of prior bad acts occurring at Easton Town Center (Doc. 75); and (7) motion in limine to exclude evidence of Defendant's use or possession of certain sums of money (Doc. 76). In addition, the Government has filed a notice of intention to use other crimes, wrongs or acts

evidence in which the Government gives notice of its intent to use at trial evidence relating to Defendant's prior conviction for aggravated robbery and kidnapping (Doc. 47). Defendant has filed a memorandum contra opposing the Government's use of evidence relating to Defendant's prior convictions (Doc. 71). These motions are now ripe for review and the Court will address each in turn.

## DISCUSSION

**A.**     **Defendant's Motion in Limine to Exclude References to CODIS (Doc. 51)**

The DNA Analysis Backlog Elimination Act of 2000, 42 U.S.C. § 14135a, requires those in federal custody, on parole, on probation, or on supervised release, who have been convicted of a qualifying federal offense, to provide a blood sample for DNA testing for inclusion in the Combined DNA Index System ("CODIS"), which is maintained by the Federal Bureau of Investigation. Because of Defendant's prior felony convictions, his DNA was catalogued in CODIS. In the instant case, a work glove was discovered during the course of the investigation from which DNA was extracted and submitted to the CODIS data bank for analysis. A "hit" came back linking Defendant.

Defendant asks this Court to issue a pretrial evidentiary ruling prohibiting the Government from making any references to CODIS. Defendant cites Federal Rule of Evidence ("FRE") 403 as a basis for excluding references to CODIS. Defendant argues that testimony revealing that Defendant's DNA was catalogued in CODIS would unfairly prejudice Defendant.

The Government has indicated that it will resolve this issue by referring to CODIS as a "data bank of DNA profiles or types." (Doc. 82 at 2). The Court finds that this is an appropriate resolution and further holds that the Government shall not be permitted to introduce evidence of how Defendant's DNA became catalogued in CODIS or the "data bank of DNA profiles or

types."

Defendant's motion is therefore granted.

**B.     Defendant's Motion in Limine to Exclude Fingerprint Evidence (Doc. 52)**

Defendant asks this Court to exclude evidence of a partial fingerprint belonging to Defendant, found at one of the crime scenes, unless the Court first holds a Daubert hearing and determines that the fingerprint evidence is admissible.

The Government, in its response (Doc. 83), has indicated that it does not intend to introduce fingerprint evidence relating to the Defendant during the course of the presentation of the evidence.

Because such evidence will not be presented, Defendant's motion is, in effect, granted.

**C.     Defendant's Motion in Limine to Exclude Testimony or References to a DNA "Match" (Doc. 72)**

As set forth above, DNA extracted from a glove and submitted to the CODIS data bank for analysis produced a "hit" linking the DNA on the glove to Defendant's DNA profile in CODIS.  Once it was determined that the DNA profile was Defendant's, the CPD Forensic Scientist requested that the investigators get a DNA sample from Defendant. The CPD Crime Lab then tested the DNA sample collected from Defendant. The examination found that the DNA types that had been collected from the glove matched the DNA types obtained from the oral swab standard collected from Defendant.  The report then went on to calculate that based on the DNA types previously collected from the glove, the approximate frequencies in the population are as follows:

| Database | Frequency |
|---|---|
| Caucasian | 1 in 1,346,000,000,000,000,000,000 |
| African-American | 1 in 239,000,000,000,000,000,000 |
| Hispanic | 1 in 2,183,000,000,000,000,000,000 |

Put another way, the chances of another African-American, other than Defendant,
having the same DNA types found on the glove is 3 million times greater than the present
population of the earth, approximately, 7 billion people.  The Government has disclosed its
intent to present evidence of this finding.

Defendant asks this Court to exclude references to the DNA evidence as a "match" with
Defendant's DNA.  Instead, Defendant argues that the DNA profiling statistics should be
referenced at trial "as the probability of a random match," not simply a match.  The Government,
in its response (Doc. 82), counters that the testimony regarding a DNA match is supported by the
findings of the examiner, and therefore, Defendant's motion should be denied.

The first case in the Sixth Circuit to allow testimony regarding a DNA match was *United
States v. Bonds*, 12 F.3d 540 (6th Cir. 1993).  The *Bonds* Court provided the following overview
of the DNA testing process:

> Deoxyribonucleic acid (DNA) is the molecule, found in the nucleus of
> nearly every cell of every living thing, that houses genetic information. The
> structure of this molecule in a human provides a unique genetic code for that
> person; only genetic twins have identical DNA. In some regions of the DNA
> molecule, scientists have found segments called variable number tandem repeats
> (VNTRs), which vary greatly among individuals. Accordingly, VNTR genes are
> called polymorphic because they appear in different forms, called alleles, in
> different individuals. It is these VNTR genes that are analyzed to determine
> whether biological material found in body fluid of a known individual can be
> linked to the DNA found in a body fluid sample of an unidentified crime-scene
> specimen. The greater the number of matching alleles detected in the crime-scene
> blood and a suspect's blood, the more probable it is that the suspect is the source
> of the crime-scene sample. DNA has been heralded because DNA
> markers-VNTRs-vary much more from individual to individual than do traditional
> blood serology markers-blood type and enzymes. Therefore, a detailed
> examination of DNA theoretically can yield a positive association between a

-4-

suspect's sample and a crime-scene sample.

*Id*. at 550 (footnotes omitted).  In *Bonds*, the expert witness report stated:

> [T]he FBI's DNA laboratory submitted a report stating that there was a "match" of DNA profiles from a bloodstain found in victim David Hartlaub's car and the DNA profiles derived from the blood of defendant Bonds. The FBI then calculated a probability of 1 in 270,000 that an unrelated individual selected randomly from the caucasian population would have a DNA profile matching that of Bonds. In May of 1990, the FBI revised its probability figure to 1 in 35,000. This revised probability estimate was presented to the jury in this case.

*Id*. at 551.

In the instant case, as set forth above, the chances of another African-American, other than Defendant, having the same DNA types found on the glove is 3 million times greater than the present population of the earth, approximately, 7 billion people.  The Government intends to introduce evidence regarding the DNA testing process and the foregoing statistics.  Accordingly, the testimony regarding a DNA match will be permitted.

Defendant's motion is therefore denied.


**D.    Defendant's Motion in Limine to Exclude Evidence of Enhanced or Altered Photographs or Videos (Doc. 73)**

During its investigation, the Government obtained video surveillance tapes from the banks that were robbed.  Defendant anticipates that the Government will seek to rely, in part, upon the video surveillance tapes and still photographs extracted from these tapes.  Defendant asks this Court to exclude enhanced or altered photographs and videos that compromise the relevant characteristics of the original depictions such that the images are no longer reliable. Defendant relies on *United States v. Siefert*, 351 F.Supp.2d 926, 928 (D.Minn. 2005) and FRE 1002 as a basis for exclusion.

The Government, in its response (Doc. 79), has indicated that it intends to utilize still

photographs that have been developed from the video tapes of the robberies.  The Government represents that the images are the same ones contained on the video tapes, only blown up for better viewing.

The Court agrees with Defendant that certain photograph or video enhancements can result in an inaccurate representation.  Enlarging a still photograph extracted from a video tape, however, does not distort the image such that it would become unreliable.  Instead, a simple enlargement would maintain the image while assisting the jury in perceiving and understanding the recorded event.  Accordingly, the Court finds that the enlarged photographs extracted from the video tapes are admissible as duplicates under the best evidence rule, FRE 1001(4), 1002, and 1003.  Defendant's motion is therefore denied.

**E.     Defendant's Motion in Limine to Exclude All Hearsay Evidence (Doc. 74)**

Defendant asks this court to exclude "all hearsay evidence for which there is not otherwise applicable exception."  Defendant fails to identify particular hearsay statements he anticipates the Government will offer.  Therefore, Defendant's motion is denied as premature.  If hearsay is offered in court during trial, Defendant will have the opportunity to object, and the Court will rule on Defendant's objection at that time.

**F.     Defendant's Motion in Limine to Exclude Evidence of Prior Bad Acts Occurring at Easton Town Center (Doc. 75)**

An investigation of the robberies in this case began to focus on Defendant in early May 2007.  Surveillance activities led officers to follow Defendant to the Easton Town Center. Officers observed a confrontation between Defendant and a female that resulted in the mall's security intervening.

Defendant asks this Court to exclude evidence of the confrontation and the resultant security intervention.  Defendant argues that the evidence is not relevant, and therefore, not

-6-

admissible under FRE 402.  Defendant opines that introduction of this evidence provides an

open invitation to a jury to convict Defendant merely because of a prior bad act.  Alternatively,

Defendant argues that if this evidence is found to be relevant, it should be excluded under FRE

403, because the probative value of the evidence is substantially outweighed by the danger of

unfair prejudice.

The Court agrees with Defendant that the evidence of the confrontation and resultant

security intervention is not relevant and that there is no proper purpose for the evidence's

introduction.  It is anticipated, however, that the female may be called to testify that the

Defendant was in possession of a large sum of money at Easton Town Center.  For the reasons

set forth *infra*, Section G, that testimony will be permitted.  Testimony regarding Defendant's

aggressive behavior, and the intervention of the mall security, however, shall be excluded as

irrelevant under FRE 402 and as serving no proper purpose under 404(b).  Accordingly,

Defendant's motion to exclude testimony regarding the altercation and mall security intervention

is granted.

**G.     Defendant's Motion in Limine to Exclude Evidence of Defendant's Use or
        Possession of Certain Sums of Money (Doc. 76)**

On April 13, 2007, one day after the Chase Bank robbery, the evidence suggests that

Defendant purchased a 2005 Jeep with a $7,000 cash down payment and later purchased a set of

rims for this vehicle at an estimated value of $2,000.  In addition, on May 21, 2007, there is

evidence suggesting that Defendant was seen in possession of a large sum of money at Easton

Town Center.

Defendant asks this Court to exclude this evidence as not relevant under FRE 402.

Specifically, Defendant argues that there is no evidence to substantiate that any of the cash

purchases were the product of any of these robberies, as opposed to the product of a legitimate

activity.  Defendant posits that introduction of this evidence provides an open invitation to a jury to engage in rank speculation, conjecture and suspicions.  Alternatively, Defendant argues that if this evidence is found to be relevant, it should be excluded under FRE 403, because the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.  The Government, in its response (Doc. 80), counters that the evidence is relevant as unexplained wealth after the commission of an offense, and that the evidence survives a FRE 403 balancing test.  The Court agrees with the Government.

Generally, evidence of wealth subsequent to the commission of a crime is relevant and admissible under FRE 401 and 403.  *See, e.g., United States v. Marshall,* 248 F.3d 525, 532-33 (6th Cir. 2001) (sudden unexplained wealth shortly after $60,000 was stolen from an ATM was admissible); *U.S. v. Leke*,  237 Fed.Appx. 54, 60  (6th Cir. 2007) (evidence of co-conspirator's unexplained wealth after crime of bank larceny relevant and probative).  The relevance of this evidence is to create the inference that the defendant does not possess a legitimate source of income to support his lifestyle or purchases, and the income must originate from the illegal activity. *See U.S. v. Jackson-Randolph*,  282 F.3d 369, 377 (6th Cir. 2002) (citations omitted). The real issue, therefore, is whether the relevance is outweighed by unfair prejudice as contemplated by the due process clause of the Fifth Amendment and FRE 403.  *Id*. at 378.  A court should look at the facts of each case in determining whether the evidence passes a 403 balancing test.  *Id*. (citations omitted).

The Sixth Circuit has explained how a 403 balancing test should be applied to the type of evidence the Government seeks to introduce in the present case:

> [T]he unfair prejudice does not outweigh the probative value if three factors are met: (1) there is other credible evidence, direct or circumstantial, of the illegal activity; (2) the money spent was not available to the defendant from a legitimate source; and (3) the accumulation of great wealth or extravagant spending relates

-8-

> to the period of the alleged illegal activity. Then the evidence would have been
> properly admitted to demonstrate, not just motive, but also a likelihood that the
> extra wealth came from illegitimate sources and to support an inference that the
> defendant committed the alleged crime.

*Id.* at 378.

Applying these factors to the instant case, the Court concludes that the evidence of

Defendants purchases and his possession of large sums of money is probative and admissible.

First, there is other credible evidence, such as the DNA on the glove, linking Defendant to the

Chase Bank robbery.  Second, the Government has noted in its response that it will present

evidence showing that, at the time of the bank robbery, Defendant was a part-time employee at

the Ohio State University, whose income would not support the extravagant purchases made.

Finally, temporal proximity is not an issue as the large purchases were made just one day after

the Chase Bank robbery, and the Easton possession occurred a little over one month after the

robbery.

Accordingly, Defendant's motion to exclude evidence of the use and possession of

certain monies is denied.

## H.     Use of Evidence Relating to Defendants Prior Convictions (Docs. 47, 71).

The Government has given notice of its intent to use at trial evidence relating to the

Defendant's prior convictions for Aggravated Robbery and Kidnapping. (Doc. 47).  Specifically,

the Government asserts that evidence of the following would be relevant pursuant to FRE

404(b):

> [T]he government hereby notifies the defendant that the government will produce
> evidence regarding a kidnaping [sic] and armed robbery of individuals at a Bob
> Evans Restaurant located 3049 Medina Road, Medina, Ohio on the 13th day of
> January 1994.  This robbery involved the restraining of the employees of the
> business and forcing them at gunpoint to go to the business office and open the
> same.  The defendant plead guilty to this offense on April 7, 1994.

-9-

(Gov.'s Notice at 1).

Defendant asks this Court to exclude the prior convictions, arguing that there is not 404(b) proper purpose and that any arguable probative value of the evidence is substantially outweighed by the obvious and actual risk of prejudice. (Doc. 71 at 2, 4).

The Federal Rules of Evidence, Rule 404(b) provides:

> (b) Other Crimes, Wrongs, or Acts.--Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

A court presented with evidence submitted under Rule 404(b) must first decide whether there is sufficient evidence that the other act in question actually occurred. *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir.2003) (*citing United States v. Haywood*, 280 F.3d 715, 719-20 (6th Cir.2002)). Next, a court must determine whether one of the factors justifying the admission of "other acts" evidence is material. *Id.*; *United States v. Acosta-Cazares*, 878 F.2d 945, 948-49 (6th Cir. 1989), cert. denied, 493 U.S. 899. In other words, the factor must be "at issue" in the case. *Acosta-Cazares*, 878 F.2d at 948-49.  If so, the court must then determine whether the "other acts evidence is probative of such factors. *Id.*  Finally, a court must determine, in accordance with FRE 403, whether the probative value of the evidence is substantially outweighed by its prejudicial value. *Id.*

The Government, in its Notice, fails to clearly identify the purpose for which it seeks to present evidence of Defendant's prior conviction.  The Government does, however, cite to *United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994) for the proposition that "if intent must be proved for the offense, then prior bad acts, including convictions, may be introduced to

-10-

prove that intent." (Gov.'s Notice at 2).

Though intent is a proper purpose listed in FRE 404(b), intent is simply not "at-issue" in this case. It is more plausible that the Government intended to introduce this evidence as proof of identity, given that the prior conviction was for armed robbery of a restaurant, and Defendant is charged with armed robbery of a restaurant in the instant case.

When subjected to a FRE 403 balancing test, the Court finds that the evidence of Defendant's prior conviction is not so probative that it outweighs the risk that the jury will use the evidence of his prior conviction as proof of his bad character or of his propensity to commit the same type of crimes. First, the conviction is fourteen years old, which is not reasonably near in time to the charged offenses. Second, the Court is not aware of any evidence of "highly distinctive qualities" surrounding the 1994 Bob Evans Restaurant robbery that would constitute probative modus operandi evidence. Finally, there is a substantial and obvious risk that the jury will improperly use the prior convictions as propensity evidence.

Accordingly, Defendant's motion to exclude evidence relating to Defendant's prior convictions is granted.

## DISPOSITION

Defendant's motion in limine to exclude reference to CODIS (Doc. 51) is **GRANTED.**

Defendant's motion in limine to exclude fingerprint evidence (Doc. 52) is **GRANTED.**

Defendant's motion in limine to exclude testimony or references to a DNA match (Doc. 72) is **DENIED.**

Defendant's motion in limine to exclude evidence of enhanced or altered photographs or videos (Doc. 73) is **DENIED.**

Defendant's motion in limine to exclude hearsay evidence (Doc. 74) is **DENIED** as

-11-

premature.

Defendant's motion in limine to exclude evidence of prior bad acts occurring at Easton Town Center (Doc. 75) is **GRANTED.**

Defendant's motion in limine to exclude evidence of Defendant's use or possession of certain sums of money (Doc. 76) is **DENIED.**

Defendant's motion to limine to exclude evidence relating to Defendant's prior convictions (Doc. 71) is **GRANTED.**

The Clerk shall remove Documents 51, 52, 71, 72, 73, 74, 75 and 76 from the Court's pending motions list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**