UNITED STATES DISTRICT COURT
SOUTHERN OHIO DISTRICT
EASTERN DIVISION

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

v.                                        Case No. CR-2-07-0186

                                              Judge Smith

**MARCUS K. COBB,**

      **Defendant.**

**<u>OPINION & ORDER</u>**

On May 22, 2008, a jury found Defendant Marcus Cobb guilty of a Hobbs Act violation, bank robbery with violence and related weapons offenses.  This matter is before the Court on Defendant's motion for a new trial under Federal Rule of Criminal Procedure 33 based upon newly discovered evidence (Doc. 103).  Defendant has also requested that the Court defer ruling on this motion pending completion of a second DNA analysis. (*Id.*).  For the reasons that follow, Defendants motion is **DENIED.**

**I. BACKGROUND**

On September 6, 2007, Defendant was named in a multiple count Indictment, charging him with a violation of the Hobbs Act, bank robbery, and related weapons offenses.  The charged offenses related to the robbery of a restaurant and two banks.

A jury trial began on May 19, 2008.  During the prosecution of the Defendant, the Government relied on a variety of evidence.  For example, the Government introduced videos and photographs taken from the robberies.  These videos and photographs showed that in each of

the robberies, the robber wore a blue sweatshirt with a yellow strip down the side and in two of the robberies, a blue hat with distinctive stitching. The robbery victims testified that the videos and pictures accurately reflected what they remembered the robber wearing. A Government witness testified that these articles of clothing were recovered from Defendant's home. There were two in-court identifications by robbery eye-witness victims. Evidence was introduced revealing large cash purchases made by Defendant shortly after the robberies. The Government also relied on DNA evidence matching Defendant to a glove found near an abandoned car that was taken from the scene of one robbery.

On May 21, 2003, after the close of evidence, Defendant's counsel, Mr. Benton, twice moved for a Rule 29(a) Judgment of Acquittal, arguing both times that the evidence was insufficient to sustain a conviction. (Transcript, Vol. 4-170, 4-186). The Court denied the motions. (Transcript, Vol. 4-176, 4-186). The following day, on May 22, 2003, after the case had been submitted to the jury, but prior to the jury's announcement of a verdict, Mr. Benton orally moved for a Rule 29(c) Judgment of Acquittal based upon his discovery that there was some conflict concerning the Government's DNA expert's testimony as to the electronic data that had been provided to Defendant's DNA expert for the purposes of performing DNA re-analysis. (Transcript, Vol. 5-2, 5-3, 5-4). Mr. Benton indicated that he intended to file a written motion raising these same issues. (Transcript, Vol. 5-3). The Court then took the verdict. The jury found Defendant Marcus Cobb guilty of violating the Hobbs Act, armed bank robbery and weapons violations. (Transcript, Vol. 5-6).

On May 29, 2008, Defendant filed a motion for a new trial under Federal Rule of Criminal Procedure 33 based upon newly discovered evidence (Doc. 103). Defendant has also requested that the Court defer ruling on this motion pending completion of a second DNA

analysis. (*Id.*).  Defendant's motion was based upon Defendant's counsel's discovery that Defendant's DNA expert did not have the electronic data from the April 2007 and August 2007 DNA tests when performing his re-analysis.  A short discussion regarding the DNA tests performed and their results is helpful in understanding Defendant's motion.

Three separate tests were performed.  The April 2007 test was performed on DNA extracted from a work glove that was discovered during the course of the investigation.  The DNA from this test was then submitted to the CODIS[1] data bank for analysis.  A "hit" came back linking Defendant.  The June 2007 test was performed on a DNA sample provided by Defendant Cobb.  According to the Government's DNA expert, Ms. Clarkson, the DNA extracted from the glove matched the DNA sample provided by Defendant Cobb.  Ms. Clarkson testified that the chances that the DNA on the glove came from anyone other than Defendant were 1 in 239,500,000,000,000,000,000.  The August 2007 test was performed on a DNA sample provided by Defendant Cobb's former girlfriend, Ms. Thompson.  Based upon the testing results, Ms. Clarkson testified that Ms. Thompson could not be excluded as a possible DNA contributor on the glove.

Defendant's first DNA expert, Dr. Theodore Kessis, PhD., only requested the hard copy of the case files for each of the DNA tests.  He did not ask for the electronic versions of the data, and he did not feel that retesting of the glove was necessary to make a determination.  Defendant's second DNA expert, Dr. Krane, requested both the hard copies and the electronic

---

[1]The DNA Analysis Backlog Elimination Act of 2000, 42 U.S.C. § 14135a, requires those in federal custody, on parole, on probation, or on supervised release, who have been convicted of a qualifying federal offense, to provide a blood sample for DNA testing for inclusion in the Combined DNA Index System ("CODIS"), which is maintained by the Federal Bureau of Investigation.  Because of Defendant's prior felony convictions, his DNA was catalogued in CODIS.

copies of the data from the DNA tests. Dr. Krane was provided with the hard copies of the data from all of the DNA tests and a CD which was assumed to contain the electronic data from the April 2007 and August 2007 tests. The electronic data from the June 2007 test had been permanently lost prior to the discovery process. The jury was made aware, through Ms. Clarkson's testimony, that Defendant's second DNA expert, Dr. Krane, was not provided with the electronic data from the June 2007 test. Ms. Clarkson further testified at trial that Defendants's DNA expert was provided with hard copies of the data from all of the DNA tests and the electronic data from the April 2007 and August 2007 tests. Defendant's Motion was based upon his counsel's discovery that contrary to Ms. Clarkson's testimony, Defendant's DNA expert did not have the electronic data from the April 2007 and August 2007 DNA tests when performing his re-analysis. Ms. Clarkson has explained that the CD that was provided to Defendant's counsel, which was thought to contain electronic data from the April 2007 and August 2007 tests, was corrupted such that Defendant's DNA expert was unable to open the file links to access the necessary electronic data. Consequently, Defendant's DNA expert proceeded with his re-analysis using only the hard copies of the data from each of the three DNA tests, and was ultimately able to come to a conclusion using only the hard copies. Defendant's counsel, Mr. Benton, was apparently unaware that Defendant's DNA expert relied exclusively on the hard copies of the data with respect to the April 2007 and August 2007 tests until after trial. Defendant's motion seeks a new trial based upon his discovery and also asks this Court to defer ruling on this motion pending completion of a second DNA analysis.

## II. RULE 33 MOTION FOR A NEW TRIAL STANDARD

Rule 33 of the Federal Rules of Criminal Procedure permits a district court, upon a defendant's motion, to "vacate any judgment and grant a new trial if the interest of justice so

requires."

A defendant must satisfy a four-part test in order to obtain a new trial based on newly discovered evidence under Criminal Rule 33. " [A] defendant must establish: '(1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal.'" *United States v. Blackwell*, 459 F.3d 739, 768 (6th Cir. 2006), *cert. denied*, 127 S.Ct. 1336 (2007) (*quoting United States v. Glover*, 21 F.3d 133, 138 (6th Cir.1994)).

### III.  DISCUSSION

Defendant asserts that the newly discovered evidence consists of the post-trial discovery by Mr. Benton that the CD provided to Mr. Benton on April 23, 2008—which was assumed to contain electronic copies of the raw data from the April 2007 and August 2007 DNA tests—contained broken links such that Defendant's DNA expert could not perform re-analysis for these particular tests using the electronic data contained on the CD.  The Court finds that Mr. Benton's discovery that Defendant's DNA expert could not access the electronic back-up files from the April 2007 and August 2007 DNA tests when performing his re-analysis of the DNA does not support a new trial under Rule 33.  Though the first prong of the four-factor test is met—the corruption of the CD was not discovered by Defendant's counsel until after the trial—Defendant has not satisfied any of the final three prongs.  The Court's analysis with respect to the final three prongs follows.

**A.**     **Prong Two:  The Evidence Could Not have Been Discovered With Due Diligence**

Though Defendant, in his motion, identifies the appropriate four-part test that must be employed by courts reviewing a Rule 33 motion for a new trial based upon newly discovered

evidence, Defendant fails to explain why the faulty disk could not have been discovered before trial. (*See* Def.'s Mot. for New Trial at 2-3).  The CD was provided to Mr. Benton on April 23, 2008.  Mr. Benton represented to the Court that his expert performed re-analysis, and he was able to make a conclusion based upon the data which he had been provided. (*See* Transcript, Vol. 2-3, 2-4, 2-5, 3-55, 3-58, 3-59).  Presumably then, Defendant's DNA expert, who has stated that the best way to do re-analysis is via electronic data, would have been aware that he could not access the data on the disk when he began his analysis.  Though Defendant's DNA expert communicated the results of his analysis to Mr. Benton, there was apparently a breakdown in communication regarding the form of the data the DNA expert utilized in reaching his conclusion, at least with respect to data from the April 2007 and August 2007 tests.  If the electronic data (as compared to the underlying hard copies of the data) is as critical to performing a re-analysis as Defendant's counsel now suggests, then surely Defendant's DNA expert would have made Defendant's counsel aware of his inability to access the electronic data on the disk he had been provided.  Or, at a minimum, with due diligence, Defendant's counsel should have discovered this information when speaking with his DNA expert about his conclusions.

Had Defendant's counsel made the Government's DNA expert aware of the disk failure, Defendant's DNA expert could have been provided with the electronic data from the June 2007 and August 2007 tests.  Ms. Clarkson, the Government's DNA expert, stated in her affidavit that "Had the defense counsel contacted me shortly after giving them the CD I could have [discovered the broken link on the CD] prior to the start of trial and given them the additional data they needed.  The whole process took me a matter of minutes to discover the link being broken and what would rectify this." (Clarkson Aff.).

In summary, Defendant's counsel has failed to offer a reason why the evidence of the disk's corruption could not have been discovered by him before trial, and the Court sees no reason the evidence could not have been discovered earlier with due diligence. Consequently, Defendant's motion for a new trial must be denied because Defendant has failed to satisfy the second prong of the four-part test.

**B.     Prong Three: The Evidence is Material and Not Merely Cumulative or Impeaching**

Under this prong of the four-part test, Defendant must demonstrate that Mr. Benton's post-trial discovery—that his DNA expert could not access the electronic back-up files from the April 2007 and August 2007 DNA tests when performing his re-analysis of the DNA—is material rather than merely cumulative or impeaching. *See Blackwell*, 459 F.3d at 768. Defendant argues that the new evidence is material because "[t]he DNA evidence was the linchpin leading to the Defendant's arrest and the issuance of a warrant to search his residence." (Def.'s Reply at 2-3). Though Defendant's statement regarding the significance of the Government's discovery of DNA evidence is correct, his argument is misleading because it mischaracterizes the nature of the newly discovered evidence. The discovery does not consist of a DNA mix-up or a claim that the Government's DNA expert utilized improper or inferior testing or analyzation methods. Instead, the newly discovered evidence consists solely of Defendant's counsel, Mr. Benton's, discovery that the CD provided to Defendant's DNA expert was corrupted such that the expert proceeded with his analysis of the April 2007 and August 2007 DNA tests utilizing only the underlying data. Defendant has failed to demonstrate that Mr. Benton's discovery is material, and the Court concludes that Mr. Benton's discovery is not material because the fact that Defendant's DNA expert relied exclusively on the underlying data in performing his analysis is not material. Mr. Benton's representations to the Court throughout

the trial, and Ms. Clarkson's testimony during the trial, support this conclusion.

At several points throughout the trial, Mr. Benton represented to the Court that Defendant's DNA expert was able, with the material he had been provided, to conduct a complete review, arrive at a conclusion and did not find retesting necessary. For example, on Monday, May 19, 2008, during the trial, but outside the hearing and presence of the jury, Mr. Benton made representations regarding Dr. Krane's ability to evaluate the DNA testing without the electronic data:

> In discussions with my expert, what they have advised me is that the underlying data relative to the electronic information that would have been stored on this CD was, in fact, made available to them. *And from the underlying data, they were able to complete the evaluation. There would have been greater ease if the full component of the data was downloaded on the CD, but nonetheless, although it may just require more time and effort, they believe that they received all of the information and are satisfied with the information that they received.*

(Transcript, Vol. 2-3) (emphasis added). Following Mr. Benton's statement, the Court confirmed that Dr. Krane had been able to reach a conclusion based upon the underlying data they had been provided:

> THE COURT: Well, it is my understanding that the defense expert has been able to arrive at a conclusion; is that correct?
>
> MR. BENTON: That's correct, Your Honor.

(Transcript, Vol. 2-3 - 2-4). After additional discussion on the matter, the Court once again confirmed that Defendant's DNA expert had been able to arrive at a conclusion based upon the material provided to him:

> THE COURT: Well, the outcome, as I understand it at this point is -- and correct me if I am wrong, counsel -- is that there is a match. And defendant and defendant's counsel's expert's opinion or testimony would be to that effect, too.

(Transcript, Vol. 2-5).

Again on Tuesday, May 20, 2008, during the trial, but outside the hearing and presence

of the jury, the Court confirmed with Mr. Benton that Defendant's DNA expert had obtained sufficient information to allow him to reach a conclusion:

> THE COURT: And it is my understanding, correct me if I am wrong, that the information that went to your expert on this was enough information to come up with the conclusion that they came to. Am I correct in that?
>
> MR. BENTON: Your Honor, that is correct. As relates to the presence of the DNA, and also, in response to the issue regarding any additional contributors.

(Transcript, Vol. 3-55). Mr. Benton went on to represent to the Court that Defendant's DNA expert had concluded that they were able to conduct a complete review with the information they had been provided, and that retesting was not necessary:

> [Defendant's DNA expert] . . . concluded that they were still, nonetheless, able to conduct a complete review, short of a retesting. They were able to conduct a complete review, and they were satisfied with the information that has been given to them.

(Transcript, Vol. 3-58). Mr. Benton explained to the Court, as he had earlier, that the lack of electronic data only changed the method of review such that the analysis took longer and was done manually rather than via a computer:

> The only problem that the CD-rom created was the method by which the review was to take place. If all of the electronic data was downloaded onto the CD, then they could take the CD, place that into a computer, and I guess the computer software would then analyze that information. [Where the electronic data was not available], . . . they had to take the longhand route and that required them to review manually all of the handwritten documentation or all of the underlying documentation that was provided . . . .

(Transcript, Vol. 3-58). And again, Mr. Benton represented to the Court that the Defense's DNA expert was able to complete their analysis with the information they had been provided:

> [The Defense's DNA expert has] indicated that without the complete electronic data or the CD, they could not provide a Genophiler report, but nonetheless they were still able to provide the complete analysis.

(Transcript, Vol. 3-59).

Finally, Mr. Benton again represented to the Court that a retesting of the glove was not necessary:

> In every case that I have had that involved a subsequent retesting of DNA analysis, the experts always request an opportunity to first to analyze the testing procedures that have already been done. That was the case likewise here.
>
> One of the questions that was specifically asked of Ms. Rowland on behalf of Dr. Krane's office was whether or not a retesting of the glove was necessary. She said emphatically no.

(Transcript, Vol. 3-62).

Ms. Clarkson's testimony at trial was consistent with Mr. Benton's representations that the Defendant's DNA expert was able, with the material he had been provided, to conduct a complete review and arrive at a conclusion. She indicated that Defendant's DNA expert was not provided with complete electronic data, but was provided with all of the original information from each of the tests. (Transcript, Vol. 4-43, 4-44, 4-50, 4-76). She also testified that based on the information that she gave to Defendant's counsel, that she would have been able to review it herself and come to a conclusion as to whether or not the DNA sample submitted from Mr. Cobb matched the DNA sample taken from the glove. (Transcript, Vol. 4-76). Finally, Ms. Clarkson admitted that the "preferred method" to begin with when doing "the whole process of DNA analysis" is computer re-analysis, but she testified again that re-analysis can also be performed with "the hard copy information." (Transcript, Vol. 4-158).

In summary, the Court finds that the fact that Defendant's DNA expert relied exclusively on the underlying data in performing his analysis is not material. Defendant's expert was able to reach a conclusion based upon his re-analysis of the underlying data, and therefore, the Court finds it unnecessary to defer ruling on this motion to allow for completion of a second DNA analysis. Defendant has failed to demonstrate that Mr. Benton's post-trial discovery—that

Defendant's DNA expert had been provided with a corrupted CD, and consequently relied exclusively on the hard copies when performing the re-analysis—is material. Consequently, Defendant's motion for a new trial must be denied because Defendant has failed to satisfy the third prong of the four-part test.

**C.      Prong Four:   The Evidence Would Likely Produce an Acquittal**

The Court finds that Defendant has failed to demonstrate that Mr. Benton's post-trial discovery would likely result in an acquittal if the case were retried. For the reasons discussed *infra*, the Court has determined that the evidence of the disk's corruption is simply not material. Even if the Court had determined that the evidence was material, however, the Court would still find that Defendant has failed to satisfy the fourth prong of the test because the Government, during the prosecution of the Defendant, relied on the DNA evidence in addition to other evidence that, standing alone, would be sufficient to support a conviction (i.e., photographs, videos, a distinctive sweatshirt and hat, evidence of unexplained wealth following the robberies, in-court identifications from robbery victims . . . etc.). Though Defendant correctly points out that it was the DNA evidence that led to the issuance of a warrant and the recovery of the articles of clothing, as the Court has pointed out *infra*, Mr. Benton's newly discovered evidence does not consist of a DNA mix-up or a claim that the Government's DNA expert utilized improper or inferior testing or analyzation methods. Consequently, the newly discovered evidence has no effect on the propriety of the issuance of the warrant. And, the newly discovered evidence does not alter Ms. Clarkson's testimony regarding a DNA expert's ability to do re-analysis from files in hard copy. Nor does it erase Mr. Benton's representation to the Court that Defendant's DNA expert was able to reach a conclusion. Finally, and most significantly, it does not alter Ms. Clarkson's testimony to the jury about the results of her tests, which concluded that the chances

that the DNA on the glove came from anyone other than Defendant were 1 in 239,500,000,000,000,000,000.   In conclusion, because Defendant has failed to demonstrate that a new trial would result in Defendant's acquittal, Defendant's motion for a new trial based upon newly discovered evidence must be denied because Defendant has failed to satisfy the fourth prong of the four-part test.

## DISPOSITION

For all of the foregoing reasons, Defendant's motion for a new trial (Doc. 103) is **DENIED.**

The Clerk shall remove Document 103 from the Court's pending motions list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**